757 So.2d 590 (2000)
PUTNAM COUNTY ENVIRONMENTAL COUNCIL, INC., Appellant,
v.
BOARD OF COUNTY COMMISSIONERS OF PUTNAM COUNTY, etc., et al., Appellee.
No. 5D99-2508.
District Court of Appeal of Florida, Fifth District.
May 12, 2000.
*591 Michael W. Woodward of Keyser & Woodward, P.A., Interlachen, for Appellant.
Terrell K. Arline of 1000 Friends of Florida, Inc., Tallahassee, Amicus Curiae in Support of Appellant Putnam County Environmental Council, Inc.
Russell D. Castleberry for Board of County Commissioners of Putnam County; and Edward E. Hedstrom for District School Board of Putnam County and Roberts Land and Timber Company, Palatka, Appellees.
ANTOON, C.J.
Putnam County Environmental Council, Inc. (PCEC), a nonprofit corporation, filed an action seeking injunctive and declaratory relief. The action challenged the Putnam County Board of County Commissioners' (County Commission) affirmance of the Board of Adjustment's order approving an application for a special exception to the county's comprehensive land use plan. The trial court dismissed the action, ruling PCEC did not possess standing to challenge the order under section 163.3215 of the Florida Statutes (1999). We reverse.
Roberts Land and Timber Company (Roberts) owns property located in Putnam County. The land, zoned for agricultural use, is located adjacent to the Etoniah Creek State Forest on Highway 100. Roberts and the Putnam County District School Board applied for a special exception to the county's comprehensive plan to allow the construction of a regional middle school complex on Roberts' property. Following the County Commission's ratification of the Board of Adjustment's approval of the application for the special exception, PCEC filed a complaint seeking to enforce Putnam County's comprehensive plan pursuant to chapter 163.
Section 163.3215 sets forth the standing requirements for parties seeking to enforce a local comprehensive plan. The statute provides:
163.3215. Standing to enforce local comprehensive plans through development orders

(1) Any aggrieved or adversely affected party may maintain an action for injunctive or other relief against any local government to prevent such local government from taking any action on a development order, as defined in s. 163.3164, which materially alters the use or density or intensity of use on a particular piece of property that is not consistent with the comprehensive plan adopted under this part.
(2) "Aggrieved or adversely affected party" means any person or local government which will suffer an adverse effect to an interest protected or furthered by the local government comprehensive plan, including interests related to health and safety, police and fire protection service systems, densities or intensities of development, transportation facilities, health care facilities, equipment or services, or environmental or natural resources. The alleged adverse interest may be shared in common with other members of the community at large, but shall exceed in degree the general interest in community good shared by all persons.

§ 163.3215, Fla. Stat. (1999)(emphasis added).
The County Commission moved to dismiss the complaint on the grounds that PCEC lacked standing under section 163.3215. The trial court granted the motion *592 to dismiss with leave to amend. PCEC then amended its complaint to include allegations of the specific adverse effects that it and its members would suffer to their interests in the conservation and protection of the natural resources of the Etoniah Creek State Forest if construction of the school was permitted. Specifically, PCEC's complaint asserted:
A. PCEC's primary organizational purposes and activities include the study and protection of natural resources and the advocacy of sound land use and growth management policies affecting the environment.
B. Officers and members of PCEC initiated and facilitated the original public acquisition of the Etoniah Creek State Forest, which is located adjacent to the subject parcel.
C. A substantial number of PCEC's members, along with non-members who participate in PCEC-sponsored activities, use the Etoniah Creek State Forest for recreational and educational purposes.
D. The use allowed under the special exception will adversely affect PCEC's use and its members' use of the adjacent Etoniah Creek State Forest as natural resource area. The use of the subject parcel for a school will adversely impact the ability of the Division of Forestry to use controlled burns to manage the adjacent state forest. Without controlled burns, habitat for a variety of species in the Etoniah Creek State Forest will be reduced or eliminated, thus adversely affecting the ability of PCEC, its members, and others who participate in PCEC-sponsored activities to observe or study those species. Also, without controlled burns, much of the forest will become overgrown with understory species, thus adversely affecting the ability of PCEC, its members, and others who participate in PCEC-sponsored activities to access and hike portions of Etoniah Creek State Forest. Furthermore, the physical presence of a school plant as well as the increased traffic and the activity, lights, and noise associated with a school facility, athletic fields, parking lots, and school bands are incompatible with Etoniah Creek State Forest's nature-based recreation and will discourage and interfere with the ability of wide-ranging species such as the black bear to reach or remain in the state forest. This will adversely affect the ability of PCEC, its members, and others who participate in PCEC-sponsored activities to observe or study those species.
The County Commission then moved to dismiss the amended complaint, again arguing that PCEC lacked standing because PCEC did not meet the statutory definition of an aggrieved or adversely affected party.
A hearing was held on the motion to dismiss, after which the trial court, in a thorough and thoughtful written order, dismissed the amended complaint with prejudice based upon the conclusion that PCEC lacked standing to challenge the order. The trial court narrowly construed the standing requirement of section 163.3215, rejecting PCEC's claim that the statute was designed to expand the group of persons possessing standing to enforce local comprehensive plans. After noting that PCEC does not own land adjacent to the rezoned property, the trial court concluded that PCEC was merely attempting to act on behalf of its perceived interest in the community good, which is an interest shared by all persons, and did not have any interests that were any greater than those of the community at large. "Any other conclusion," wrote the court, "would in essence allow any citizen to bring an action without being `aggrieved or adversely affected.'" The trial court's conclusion that section 163.3215 was not to be liberally construed was incorrect.
Prior to the enactment of section 163.3215 in 1985, the common law rule for standing applied. Under the common law rule, in order to possess standing to challenge *593 a land use decision, the party had to possess a legally recognized right that would be adversely affected by the decision. See Citizens Growth Management Coalition of West Palm Beach, Inc. v. City of West Palm Beach, 450 So.2d 204, 208 (Fla.1984). That standard changed, however, with the 1985 adoption of section 163.3215, which liberalized the standing requirements and "demonstrat[ed] a clear legislative policy in favor of the enforcement of comprehensive plans by persons adversely affected by local action." Southwest Ranches Homeowners Ass'n, Inc. v. County of Broward, 502 So.2d 931, 935 (Fla. 4th DCA), rev. denied, 511 So.2d 999 (Fla.1987); see also Education Dev. Ctr., Inc. v. Palm Beach County, 751 So.2d 621 (Fla. 4th DCA 1999) (noting that section 163.3215 is a remedial statute and as such is to be liberally construed to ensure standing to any party with a protected interest under the comprehensive plan).
Testing PCEC's allegations against the liberalized standing test of section 163.3215, we conclude that PCEC's assertions, taken as a whole, are sufficient to give PCEC standing to seek enforcement of Putnam County's Comprehensive Plan. While the mere fact of PCEC's interest in the environment is alone insufficient to give PCEC standing, see Florida Rock Properties v. Keyser, 709 So.2d 175 (Fla. 5th DCA 1998), the allegations set forth in PCEC's amended complaint were sufficient to distinguish PCEC's situation from that in Florida Rock Properties.
In Florida Rock Properties, this court rejected Keyser's assertion that his lifelong interest in environmental protection and his activism in that field gave him standing under section 163.3215, noting, "Keyser never demonstrated any specific injury, only that the county would not be as bucolic as it once was. Keyser is a citizen with an interest in the environment and nothing more." Id. at 177.
Keyser had filed suit to block Florida Rock from having 509 acres re-zoned from agricultural to mining. Keyser alleged his ownership of property 10 miles from the 509-acre site; his law firm business in Putnam County, including his representation of conservationists; his life-long interest in environmental protection matters; and the adverse impact the Board's failure to require a 25% set-aside would have on his quality of life. The trial court found that Keyser had standing because Keyser's "`exceptional personal and professional interests, efforts, and activities in conservation, wildlife and environmental protection matters were proven'" and those interests "would be adversely affected by the Board's decision `to a greater degree than ... other members of the community.'" Id. at 176. This court reversed, writing, "Had Keyser lived adjacent to the property, and had he been able to show a specific impact the zoning change would have upon him or his property, he would have standing." Id. at 177. This court also rejected Keyser's professional interests as a ground for standing. Keyser's strongest argument, this court concluded, was his claim that the zoning decision would adversely affect his quality of life by its negative impact on Putnam County's wildlife population and habitat. Id. The argument was not sufficient to carry the day for Keyser, however, because Keyser failed to demonstrate any specific injury.
In contrast to Keyser, here PCEC's complaint alleged specific injuries that PCEC would suffer if a middle school complex was constructed on Roberts' property, including the destruction of the habitat of species being studied by PCEC members and the elimination of PCEC members' access to the forest and the forest's creatures by the overgrowth of the forest. The diminution of species being studied by the group is a harm particular to PCEC, making PCEC more than just a group with amorphous "environmental concerns." Accordingly, the allegations set forth in PCEC's complaint are sufficient to demonstrate the requisite level of interest. Under *594 the liberalized standing test, PCEC possesses standing to challenge the order.
PCEC's involvement in the original acquisition of the land for use as a state forest and its continued, active connection with that state forest further demonstrate an interest greater than that which all persons share in the community good. We acknowledge that a similar argument was rejected in Friends of the Everglades, Inc. v. Board of Trustees of the Internal Improvement Trust Fund, 595 So.2d 186 (Fla. 1st DCA 1992), which was decided under the "substantial interest" standing test of the Administrative Procedure Act, a wholly different test than that involved here. See § 120.52(12), Fla. Stat. (1999). To the extent that Friends of the Everglades, Inc. can be read to hold that a group successful in having land acquired by the state for environmental protection purposes does not possess standing to challenge an environmental threat to that land, we disagree therewith. Such a group can demonstrate an interest greater than that shared by all people for the good of the community by translating its interest in environmental protection into action and results, in this case a state forest. Where, as here, the group has continued connections with the land which would be adversely impacted by the rezoning, the group possesses an interest which exceeds the general interest in community good shared by all people.
In closing, we note that the standard of review for the dismissal of a complaint for failure to allege facts establishing the plaintiff's standing is de novo review. See Turner v. Hillsborough County Aviation Auth., 739 So.2d 175, 177 (Fla. 2d DCA 1999) (holding that the appeal of a ruling on a party's standing to bring the action presents a pure question of law to be reviewed de novo), rev. granted, No. SC96674, ___ So.2d ___ (Fla. Jan.25, 2000). In conducting this review, we must accept the allegations contained in the complaint as true. See Cintron v. Osmose Wood Preserving, Inc., 681 So.2d 859 (Fla. 5th DCA 1996). Having done so, we conclude that the averments set forth in PCEC's amended complaint satisfied the standing requirement of section 163.3215. Accordingly, we reverse the trial court's dismissal order and remand this matter for further proceedings.
REVERSED and REMANDED.
GRIFFIN, J., concurs.
W. SHARP, J., concurring specially, with opinion.
W. SHARP, J., concurring specially.
I agree with the result in this case, but not its attempt to distinguish Florida Rock Properties v. Keyser, 709 So.2d 175 (Fla. 5th DCA 1998), which I believe was wrongly decided. The major distinctions are that Keyser was an individual, personally and professionally interested, and greatly involved in environmental issues concerning his county of residence and elsewherefar more than the average citizen. And, in this case, PCEC is a non-profit corporation primarily interested in a specific forest, which would be affected by the planned development. In my view, those are distinctions without great import, and both should have standing under section 163.3215, Florida Statutes. As pointed out in my dissent in Keyser, the majority opinion in that case as well as this one, leaves the very large acreage owner whose proposed development is surrounded only by the developer's own land, free from challenge pursuant to section 163.3215.