833 So.2d 215 (2002)
EDGEWATER BEACH OWNERS ASSOCIATION, INC., Appellant,
v.
WALTON COUNTY, Florida; Grand Dunes, Ltd.; and KPM, Ltd., Appellees, and
Robert A. Butterworth, Attorney General of Florida, Appellant,
v.
Walton County, Florida; Grand Dunes, Ltd.; and KPM, LTD., Appellees.
Nos. 1D00-3538, 1D00-3555.
District Court of Appeal of Florida, First District.
December 19, 2002.
*217 Richard E. Doran, Attorney General; Jonathan A. Glogau, Special Counsel, Tallahassee, for Robert A. Butterworth, Appellant.
W. Douglas Moody, Jr. of Graham, Moody & Sox; J. Riley Davis of Katz, Kutter, Haigler, Alderman, Bryant & Yon, P.A., Tallahassee, for Edgewater Beach Owners Association, Inc., Appellant.
W. Douglas Hall, Martha Harrell Chumbler, Nancy G. Linnan of Carlton, Fields, Ward, Emmanuel, Smith, & Cutler, P.A., for Grand Dunes and KPM, Appellees.

ON MOTIONS FOR REHEARING, REHEARING EN BANC, AND CERTIFICATION
LEWIS, J.
We deny the motions for rehearing en banc and certification. However, we grant the motion for rehearing for the limited purpose of clarifying our previous opinion. Therefore, we withdraw our opinion dated August 22, 2002, and issue the following clarified opinion in its place.
Edgewater Beach Owners Association, Inc. and Robert A. Butterworth, Attorney General of Florida, ("appellants") seek review of an order dismissing their action for injunction filed under section 163.3125, Florida Statutes (1995), and granting final judgment in favor of Grand Dunes and KPM ("developers"). Although the trial court erred in finding that appellants lacked standing, we affirm the trial court's order because the developers have statutory vesting rights in the development, exempting them from complying with Walton County's comprehensive plan. Because we affirm on the basis of statutory vesting, we decline to address the remaining issue on appeal.
In 1982, Walton County ("County") approved development of a six-phase condominium project containing 476 residential units. The project was authorized as a Development of Regional Impact (DRI). The County issued Resolution 82-12, authorizing construction of the project without any conditions. In 1984, Phases I and II consisting of 175 total units were completed. Edgewater Beach Owners Association, Inc. ("Association") is a condominium association and the owner of Phases I and II. The developers own the remaining undeveloped property.
As the 1982 development order had an expiration date of June 8, 1992, KPM sought an extension of the build out date and expiration date. In 1993, the County issued Resolution 93-2, which extended the expiration date of the original development order. Resolution 93-2 also approved KPM's proposed design changes, which lowered the density in Phase III from 42 units to 19 townhomes. The resolution conditionally approved construction in Phases IV through VI at the 1982 levels, subject to a traffic study. The County concluded that the amendment to the 1982 order was not a substantial deviation and *218 required no further DRI review under chapter 380, Florida Statutes.
The Association sought review of the County's 1993 resolution with the Florida Land and Water Adjudicatory Commission ("FLWAC"). FLWAC dismissed the appeal for lack of standing, stating that the Association was not a permissible party under chapter 380 to appeal to FLWAC. This Court determined that chapter 380 permitted the Association to appeal to FLWAC and remanded for further proceedings. Edgewater Beach Owners Ass'n v. Bd. of County Comm'rs of Walton County, 645 So.2d 541 (Fla. 1st DCA 1994). On remand, FLWAC found that the Association did not adequately allege an adverse effect in order to establish standing. In addition, FLWAC held that the DRI was not abandoned and that the County had the discretion to revive the 1982 DRI. On appeal, this Court affirmed FLWAC's decision. Edgewater Beach Owners Ass'n v. Bd. of County Comm'rs of Walton County, 694 So.2d 43 (Fla. 1st DCA 1997). The Association did not file any other action regarding Resolution 93-2.
In October 1995, the developers filed a Notice of Proposed Change, seeking to construct only two additional phases rather than four. The developers proposed building 89 units in Phase III and 89 units in Phase IV, each phase consisting of 20 stories. The County approved this development plan by issuing Resolution 95-82 as an amendment to the 1982 development order, as amended by Resolution 93-2. The Resolution further stated that the "DRI project is vested from application of the 1993 Walton County Comprehensive Plan pursuant to Section 163.3167(8), Florida Statutes" for development rights to 301 condominium units, the number of units allowed under the 1982 development order. The County's 1993 comprehensive plan imposed a four-story height restriction and limited the density of development to 12 units per acre.
The Association filed an appeal of this resolution with FLWAC, arguing that the changes in the development were not vested from compliance with the comprehensive plan. FLWAC upheld the Association's challenge to Resolution 95-82. This Court, however, determined that, based upon the record, the Association did not have standing to maintain the action before FLWAC. Grand Dunes v. Walton County, 714 So.2d 473 (Fla. 1st DCA 1998). The Court vacated FLWAC's order and remanded the case with directions to dismiss the petition for lack of standing. Id. at 475.
On March 7, 1996, the Association filed a complaint against Walton County, Grand Dunes and KPM, pursuant to section 163.3215 seeking to enjoin any development under Resolution 95-82.[1] It challenged *219 the validity of Resolution 95-82, claiming that it was inconsistent with the county's comprehensive plan. Grand Dunes and KPM responded that their rights to complete development vested under section 163.3167(8), Florida Statutes (1995), and under the common law principle of equitable estoppel. On December 16, 1998, Robert A. Butterworth, Attorney General, moved to intervene in the action, claiming that the issue of vested rights was an issue of statewide importance. The parties stipulated that the development amended by Resolution 95-82 would be inconsistent with the density requirements of the 1993 comprehensive plan but for the vesting of rights under statute or common law.
At trial, the Association's president testified that some members' ocean views would be blocked by the development which would lower the members' property value. She further stated that the proposed development would place some of their recreational facilities in the shade until noon. After the Association rested, the developers orally moved to dismiss, stating that the motion was a bench trial equivalent to a motion for directed verdict.
The trial court dismissed the action finding that the appellants failed to establish that they were "an aggrieved or adversely affected party" as defined in section 163.3215(2), Florida Statutes (1995). The trial court further held that, even assuming the Association had standing, the developers had vested statutory and common law rights despite the attachment of conditions to the future construction of phases IV through VI in Resolution 93-2.
Determining whether a party has standing is a pure question of law to be reviewed de novo. See Putnam County Envtl. Council, Inc. v. Bd. of County Comm'rs of Putnam County, 757 So.2d 590 (Fla. 5th DCA 2000). Prior to 1985, the common law rule for standing applied to actions challenging a land use decision. Id. at 593. Under the common law rule, a party had to possess a legally recognized right that would be adversely affected by the land use decision in order to have standing to challenge that decision. Id.; see also Citizens Growth Mgmt. Coalition of West Palm Beach, Inc. v. City of West Palm Beach, 450 So.2d 204, 208 (Fla.1984). The 1985 adoption of section 163.3215, however, liberalized the standing requirements by providing a right to enforce a comprehensive plan to parties having more than a general interest. Putnam County, 757 So.2d at 593; Southwest Ranches Homeowners Ass'n v. County of Broward, 502 So.2d 931 (Fla. 4th DCA 1987) (stating that "this section liberalizes standing requirements and demonstrates a clear legislative *220 policy in favor of the enforcement of comprehensive plans by persons adversely affected by local action").
To establish standing under section 163.3215(2), a party must demonstrate that it is an "aggrieved or adversely affected party" who will "suffer an adverse effect to an interest protected or furthered by the local government comprehensive plan." As a remedial statute, section 163.3215 should be liberally construed to ensure standing for a party with a protected interest under the comprehensive plan who will be adversely affected by the local government's actions. See Educ. Dev. Ctr., Inc. v. Palm Beach County, 751 So.2d 621 (Fla. 4th DCA 1999). The statute, therefore, gives citizens with adversely affected interests a significantly enhanced standing to challenge the consistency of development decisions with the local comprehensive plan. See Pinecrest Lakes, Inc. v. Shidel, 795 So.2d 191 (Fla. 4th DCA 2001).
Here, the Association alleged that the proposed development was inconsistent with its protected interests in density and intensity as limited under the 1993 comprehensive plan. At trial, the Association presented testimony of adverse effects to these interests if the development proceeded as approved. The Association's president testified that members' ocean views would be blocked by the development which would lower the members' property values. She further stated that the proposed development would place some of the Association's recreational facilities in the shade until noon. As an adjacent landowner, the Association has a more direct stake in the impact of the development than the general community. Under the liberalized standing requirements of section 163.3215, the Association, a group of property owners whose land adjoins the proposed development and stands to be directly affected by the alleged aspects of the development, has, therefore, shown standing to contest Resolution 95-82. Accordingly, the trial court erred in finding that the Association lacked standing to bring this action and dismissing its complaint for lack of standing.
Although the trial court erred in dismissing the Association's complaint for lack of standing, the error was harmless. It is harmless error when, absent the error, the same result would have been reached. See Nat'l Union Fire Ins. Co. of Pittsburgh v. Blackmon, 754 So.2d 840 (Fla. 1st DCA 2000). Here, absent the finding that the Association lacked standing, the trial court correctly found that the developers were vested under section 163.3167(8) from complying with the County's 1993 comprehensive plan.
We review the trial court's interpretation of section 163.3167(8) de novo. See Execu-Tech Bus. Sys., Inc. v. New Oji Paper Co., 752 So.2d 582 (Fla.2000); Agency for Health Care Admin. v. Wilson, 782 So.2d 977 (Fla. 1st DCA 2001). Section 163.3167(8) provides that: "Nothing in this act shall limit or modify the rights of any person to complete any development that has been authorized as a development of regional impact pursuant to chapter 380 or who has been issued a final local development order and development has commenced and is continuing in good faith." When a court construes a statute, its goal is to ascertain legislative intent, and if the language of the statute under scrutiny is clear and unambiguous, there is no reason for construction beyond giving effect to the plain meaning of the statutory words. Aetna Cas. & Sur. Co. v. Huntington Nat'l Bank, 609 So.2d 1315, 1317 (Fla.1992). Applying that standard here, the language of section 163.3167(8) is clear and unambiguous and should be given its plain *221 meaning. We hold that the phrase "and development has commenced and is continuing in good faith" does not modify the phrase "any development that has been authorized as a development of regional impact pursuant to chapter 380." The disjunctive "or" separates the phrase "development that has been authorized as a development of regional impact" from the phrase "final local development order and development has commenced and is continuing in good faith." Cf. Village of North Palm Beach v. Mason, 167 So.2d 721 (Fla.1964) (interpreting the phrase "holding a valid and existing franchise granted by the board of county commissioners of any county of this state in a given county" to not apply to "Every public utility" as it was separated by a comma and the disjunctive "or"). Although punctuation is the most fallible and least reliable indication of legislative intent, see Wagner v. Botts, 88 So.2d 611, 613 (Fla.1956), it should be noted that no comma or other punctuation mark exists after the phrase "or who has been issued a final local development order." Under the rule of grammatical construction, a qualifying phrase is read as limited to the last item in a series when the phrase follows that item without a comma. See State ex rel. Owens v. Pearson, 156 So.2d 4, 6 (Fla.1963). Therefore, the "continuing in good faith" requirement is limited to local development orders. The dissent interprets the "continuing in good faith" phrase to apply to a DRI development as well as local development orders. To arrive at such an interpretation would require inserting a comma after "final local development order." However, we are not permitted to add punctuation marks which the Legislature did not employ. See id.
The dissent's interpretation of section 163.3167(8) would also render the statute's reference to a DRI development order superfluous. A DRI development order is a "final local development order," just as a building permit or zoning decision is. See § 380.06(15), Fla. Stat. (1995) (setting forth the procedure for local government to follow in issuing a DRI development order); § 163.3164(7), Fla. Stat. (1995) (defining "development order" as "any order granting, denying, or granting with conditions an application for a development permit"). If the "commenced and continuing in good faith" requirement is read to apply to both DRI and non-DRI development orders, then no reason exists to distinguish the two. The Legislature could have simply granted vested rights for any development "that has been issued a final local development order and development has commenced and is continuing in good faith."
"[A]ll words in a statute should be construed so as to give them some effect, not so as to render them meaningless surplusage." Fla. Police Benevolent Ass'n v. Dep't of Agric. and Consumer Servs., 574 So.2d 120, 122 (Fla.1991); see also Hawkins v. Ford Motor Co., 748 So.2d 993, 1000 (Fla.1999) (stating that statutory interpretations which render provisions superfluous are disfavored). If the specific reference to DRI development orders in section 163.3167(8) is to be given effect, it must be read to create vested rights for DRI developments orders regardless of whether development has commenced or continued in good faith. Therefore, we reject such an interpretation which would render the reference to DRI as mere surplusage.
Furthermore, the legislative history of section 163.3167 supports our interpretation. In 1975, the Legislature created section 163.3167 and provided that "[n]othing shall limit or modify the rights of any person to complete any development that has been authorized as a Development *222 of Regional Impact pursuant to chapter 380." See Ch. 75-257, § 4, at 799, Laws of Fla. In its creation of the vesting provision, the Legislature did not require that a DRI development must commence and continue in good faith for the developer to maintain its right to develop the DRI. In 1985, the Legislature added the phrase "or who has been issued a final local development order, and development has commenced and is continuing in good faith." See Ch. 85-55, § 3, at 213, Laws of Fla. In this legislation, the Legislature included a comma after "local development order." The inclusion of this comma suggests that the "continuing in good faith" requirement would apply to a DRI development as well. However, the very next year, the Legislature purposely deleted the comma from the statute. See Ch. 86-191, § 6, at 1415, Laws of Fla. This shows an intent that the good faith requirement should not apply to a DRI development. Accordingly, we conclude that upon attaining an authorized DRI development, a developer need not commence or continue development in order to retain its vesting rights under section 163.3167.
As the present case involves a development of regional impact, section 163.3167 must be read in pari materia with the requirements of section 380.06, Florida Statutes (1995). See State v. Fuchs, 769 So.2d 1006 (Fla.2000) (stating that statutes relating to the same or closely related subject should be read in pari materia); Miami Dolphins, Ltd. v. Metropolitan Dade County, 394 So.2d 981 (Fla.1981). Section 380.06 outlines the procedures for review and approval of a development of regional impact. Once approved as a DRI and a development order has been issued authorizing development, a project need not be subject to additional DRI review and approval under section 380.06 unless an amendment to the project involves a substantial deviation. § 380.06(19), Fla. Stat. (1995).
Section 380.06(19) provides for the local government to determine whether a proposed amendment to a DRI constitutes a substantial deviation. Here, the County specifically found in both the 1993 and 1995 resolutions that the amendments were not substantial deviations requiring further DRI review. On appeal, appellants do not challenge this determination.[2] Because neither the 1993 nor the 1995 resolution involved substantial deviations, the changes did not require further DRI review.
As the amendments did not require further DRI review, the project did not lose its original authorization for DRI development in the 1982 resolution, which the 1993 and 1995 resolutions amended. Section 163.3167(8) specifically states that the developers have vested rights to complete "any development that has been authorized" as a DRI. By the plain meaning of the word "any," vesting attaches once the original DRI development order authorizes development. This vesting would continue until the development was subjected to another DRI review. That is, non-substantial deviations to the original DRI development order would not cause loss of the vesting rights to the original development plan. Under section 380.06(19), a substantial deviation would lead to a new DRI review and a new authorization for DRI development. Therefore, with a substantial deviation, a developer would lose any vested rights in the previous development, and new vested rights would arise *223 under section 163.3167(8) for the new DRI authorization.
Here, the developers did not lose any vesting rights to the original development plan because the 1993 and 1995 resolutions were non-substantial deviations. Furthermore, the 1982 development order authorized unconditional development of the project. The developers were not required to obtain future development orders to complete Phases III through VI. Therefore, we affirm the trial court's finding that the 1993 and 1995 amendments did not limit or modify the developers' statutorily protected vesting rights to the 1982 development plan.
The Association and the Attorney General cite section 163.3194(1)(a), Florida Statutes (1995), for the proposition that the 1995 resolution must comply with the County's 1993 comprehensive plan. Section 163.3194(1)(a) states: "After a comprehensive plan, or element or portion thereof, has been adopted in conformity with this act, all development undertaken by, and all actions taken in regard to development orders by, governmental agencies in regard to land covered by such plan or element shall be consistent with such plan or element as adopted." (emphasis added). This section only applies to land covered by the County's 1993 comprehensive plan. As discussed above, section 163.3167(8) removes the vested 1982 development area from the requirements of the 1993 comprehensive plan. Therefore, section 163.3194(1)(a) does not apply in this situation. As such, the amended development order need not be consistent with the comprehensive plan. Accordingly, the trial court did not err in finding that the developers were vested, under section 163.3167(8), from complying with the County's 1993 comprehensive plan.
We, therefore, affirm the trial court's entry of final judgment in favor of the developers.
AFFIRMED.
BARFIELD, J., concurs; BOOTH, J., dissents with written opinion.
BOOTH, J., dissenting.
I must respectfully dissent from the majority's proposed affirmance.[1] KPM, Appellee/developer, has failed to cite any statute, rule or case empowering the County to revive the expired 1982 DRI permit. Further, the developer did not present evidence of continuing good faith development. Fla. Stat. § 163.3167(8). On the contrary, the evidence is that the project was abandoned, both expressly by letter of KPM's predecessor in interest, and implicitly due to the developer's failure to pursue the project, leaving it dormant for more than eight years.
The original DRI permit, issued in 1982, had an expiration date of June 8, 1992. After completing the first two phases of the project in 1984, the original developer, Edgewater Development Associates, Ltd., conducted no further development and went bankrupt that same year. The project sat dormant, essentially abandoned for eight years, until KPM, Appellee herein, acquired the property in 1992 and timely applied for an extension of the permit before the expiration date of June 8, 1992. However, KPM later decided to withdraw *224 its application,[2] and the permit expired. KPM subsequently applied for an extension of the original build-out date of the 1982 permit, despite the fact that the permit had lapsed.
At a public hearing before the Board of County Commissioners on December 29, 1992, the attorney for the appellant condominium association pointed out that an "extension" of the 1982 permit would actually operate as a revival of the expired permit, and that the County had no authority to revive a defunct permit. KPM was unable to offer any authority on which the County could rely to resurrect an expired DRI permit, and indeed no such authority exists. Nonetheless, in January 1993, the commission members decided to revive the expired permit, apparently under a "vesting" rationale.[3]
The controlling state statute does not provide for revival of an expired DRI permit. The County's authority to act on DRI permits derives from section 380.06, Florida Statutes, also known as the DRI statute. This statute requires the County to establish a termination date in any DRI development order, and it provides that the County may grant an extension of a DRI permit while the permit is in effect. However, there is no provision in the statute allowing for the revival of an expired development order, nor does any local ordinance or case law precedent empower the County to revive a permit once it has expired. Therefore, the action of the County in reviving the expired permit was ultra vires, and thus without legal effect.
The majority attempts to justify its rationale based on the absence of a comma in section 163.3167(8).[4] A logical reading of that statute is that DEVELOPMENTS, whether "of regional impact pursuant to chapter 380" or pursuant to a "final local development order" must be commenced and continue in good faith in order to avoid compliance with subsequent changes in the law. To read the statute otherwise leads to absurd results, contrary to a basic axiom of statutory construction that an unreasonable conclusion be avoided. Allied Fidelity Ins. Co. v. State, 415 So.2d 109, 110-111 (Fla. 3d DCA 1982). The majority view would lower the standard for developments of regional impact, but subject developments pursuant to final local development orders to a good faith standard and continuity requirement.[5]
*225 Additionally, the majority's argument is totally irrelevant because development cannot be revived under subsection (8). There is no provision in subsection (8) authorizing the revival of a development of any kind. This statute is intended to address the rights of persons proceeding with development from being unfairly affected by subsequent changes in the law. Here, the project was abandoned for almost a decade and is not subject to review.
The last development was in 1984. The EAB company, formed by the mortgagee bank to act as substitute developer, filed with the Bureau of Condominiums a declaration that it had no intention of carrying out any further condominium development on the property. Indeed, no development took place between 1984 and 1992, when KPM purchased the property and withdrew its application for extension of the permit.
The County should have treated the development as abandoned.[6] In failing to do so, the County misapplied the law. The developer did not meet the requirements of section 163.3167(8) for "vesting," since the development was not continuing in good faith so as to retain any rights under the expired permit.
This case aptly illustrates the dangers inherent in misapplying section 163.3167(8). Development on the project ceased in 1984, the project remained abandoned for at least eight years, the original permit expired, and over the course of some 20 years the intensity and density of the planned project changed significantly. By the majority's view, these changes are allowed under the statute, without further DRI review and despite major changes in the local comprehensive plan. The majority's holding will surely cause a considerable environmental impact and subject this coastal area to an unforeseen degree of development. Such a result is exactly what Florida's DRI and comprehensive planning laws aim to avoid, and the majority's decision in the present case will encourage further thwarting of our state's land use laws, defeating their very intent. Thus, I agree with the Attorney General's argument that KPM does not have "vested" rights pursuant to section 163.3167(8).[7]
*226 The County should have required KPM to apply for a new permit, to undergo DRI review for any further development of the property, and to comply with the current comprehensive plan. Therefore, I would reverse the decision of the Circuit Court.
NOTES
[1] The Association's complaint filed in this proceeding only challenged Resolution 95-82. Contrary to the dissent's assertion, the Association could not and did not challenge the County's decision in Resolution 93-2 to revive the 1982 DRI. The Association filed the instant proceeding under section 163.3215, Florida Statutes (1995), asserting only that Resolution 95-82 was inconsistent with the County's comprehensive plan. Section 163.3215 only permits the Association to challenge a development order on the basis that it is inconsistent with the comprehensive plan.

In addition, the revival issue has previously been litigated before FLWAC in a separate proceeding. In January 1993, pursuant to section 380.07, Florida Statutes (1991), the Association appealed to FLWAC the Board of County Commissioners' January 1993 decision to revive the 1982 DRI via Resolution 93-2. FLWAC held that the Association lacked standing to appeal the resolution to FLWAC but also found that the DRI was not abandoned and that the County had the discretion to revive the 1982 DRI. Edgewater Beach Owners Ass'n v. Bd. of County Comm'rs of Walton County, No. LW-95-056 (FLWAC Oct. 24, 1995). This Court affirmed FLWAC's final order on appeal. Edgewater Beach Owners Ass'n v. Bd. of County Comm'rs of Walton County, 694 So.2d 43 (Fla. 1st DCA 1997). As the Association elected to pursue litigation of Resolution 93-2 before FLWAC, they could not seek a remedy under section 163.3215 upon FLWAC's finding of lack of standing. Section 163.3215(4), Florida Statutes (1991), requires that the Association file a verified complaint with the County within 30 days of the alleged inconsistent action by the County. More than thirty days had elapsed since the County passed Resolution 93-2 before FLWAC dismissed the Association's petition for lack of standing.
More importantly, the Association did not argue below at trial in this proceeding that the County improperly revived the DRI; rather the Association merely argued that any changes to the original development order must comply with the comprehensive plan in effect at the time of the change. The Association also did not raise the revival issue in this appeal. Therefore, the issue of the County's improper revival of the 1982 DRI is not properly before this Court for review. See F.M.W. Props., Inc. v. Peoples First Fin. Sav. and Loan Ass'n, 606 So.2d 372 (Fla. 1st DCA 1992).
[2] The County's determination that the amendments were not substantial deviations is reviewable only by FLWAC. See §§ 380.06(19)(f)6 and 380.07, Fla. Stat. (1995).
[1] The majority holds that the Association has standing to sue pursuant to section 163.3125, Florida Statutes, a result with which I agree. However, I would also reverse the trial court on its holding that KPM has a vested statutory right in the development or the DRI. The court's opinion in Edgewater Beach Owners Association v. Board of County Commissioners of Walton County, 694 So.2d 43 (Fla. 1st DCA 1997), rested solely on the standing issue and does not support the majority here on the other issues.
[2] KPM's withdrawal of the application for extension is documented in a July 1992 letter from Shirl Williams, Administrative Supervisor for the Walton County Board of County Commissioners, to Doug Stowell of KPM, expressly acknowledging KPM's withdrawal of the application to extend. The letter stated that the 1982 development order had expired and advised that KPM would have to reapply for a new permit, undergo DRI review for any further development of the property and comply with the current comprehensive plan.
[3] The public hearing took place in two parts, the first being in December 1992 and the second in January 1993. Although a tape of the December 1992 part of the hearing appears in the record on appeal, no such tape or transcript of the January 1993 portion was provided.
[4] Section 163.3167(8) provides as follows:

(8) Nothing in this act shall limit or modify the rights of any person to complete any development that has been authorized as a development of regional impact pursuant to chapter 380 or who has been issued a final local development order and development has commenced and is continuing in good faith.
[5] In State ex rel. Owens v. Pearson, 156 So.2d 4, 6 (Fla.1963), the court followed established rules of grammatical construction, that "following an enumeration in a series, a qualifying phrase will be read as limited to the last of the series when it follows that item without a comma or other indication that it relates as well to those items preceding the conjunction." (emphasis added). First, section 163.3167(8) does not enumerate a series. Further, there is "other indication" that, by using the word "development" in each clause of the sentence, the Legislature intended "development has commenced and is continuing in good faith" to apply to a "development" of regional impact and a final local "development" order.
[6] Moreover, Appellants pointed out at the December 1992 hearing that, under the local land development code, failure to continue in good faith to complete a project is considered abandonment of the project. Therefore, under local laws as well as under section 163.3167(8), the project should have been considered dead, and KPM should have been required to reapply for a permit under the DRI statute. Additionally, the Florida Condominium Act, section 718.403, Florida Statutes, provides that a developer authorized to build a development in phases must build out the project within seven years of the time it records its declaration of condominium. Here, the declaration of condominium was recorded in June 1984, thus, under chapter 718 the deadline to complete the Edgewater project would have been June 1991.
[7] As the Attorney General states in his Amended Motion for Rehearing and/or For Certification:

[A] local government loses control of a DRI development order for a project when that development order and all extensions have expired. Local governments are without authority to consider any requested changes to the expired development order for the original project. Even if the local government still had authority to alter the original DRI development order, both this court and the local government erred in their interpretation of their authority by considering the project vested against application of the currently effective comprehensive plan.