890 So.2d 256 (2004)
BAY POINT CLUB, INC., Appellant,
v.
BAY COUNTY, a political subdivision of the State of Florida, and K. Earl Durden; David Allen Spencer; Harry B. Sipple, III; Unal Tutak; David W. Hill; Lucy N. Hilton; William F. Fusselman; and Bay Point Community Association, Inc., Appellees.
No. 1D03-1240.
District Court of Appeal of Florida, First District.
October 25, 2004.
*257 D. Andrew Byrne and Bram D.E. Canter, Cooper, Byrne, Blue & Schwartz, LLC, Tallahassee; and Kenneth D. Goldberg, Tallahassee, for Appellant.
Robert C. Apgar and Sherry A. Spiers, Law Offices of Robert C. Apgar, Tallahassee, for Appellees, representing K. Earl Durden, et al.
Michael S. Burke; Burke, Blue & Hutchison, P.A., Panama City, for Appellees, representing Bay County.
Paul H. Amundsen and Richard W. Moore; Amundsen & Gilroy, P.A., Tallahassee, for Appellees, representing Bay Point Community Association.
Janet E. Bowman, Legal Director, 1000 Friends of Florida, Tallahassee, as Amicus Curiae.
David L. Jordan, Deputy General Counsel, Department of Community Affairs, Tallahassee, as Amicus Curiae.
EN BANC
HAWKES, J.
This case involves the extent of vested rights in a development of regional impact (DRI). We consider the case en banc, pursuant to Florida Rule of Appellate Procedure 9.331(1), to maintain uniformity of this court's decisions. A proper resolution of this case requires us to recede from our prior decision in Edgewater Beach Owners Ass'n v. Walton County, 833 So.2d 215 (Fla. 1st DCA 2002), rev. denied, 845 So.2d 889 (Fla.2003), to the extent that it conflicts with this opinion.
The question before us is: Once a DRI has been approved by the regional planning agency, do all proposed changes not requiring additional regional review become vested development rights, exempt from any local government review and approval? We answer the question "no," and affirm the order of the Florida Land and Water Adjudicatory Commission (FLWAC).
Bay Point Club, Inc. (Appellant) proposed changes to a relatively small portion[1] of a previously approved DRI. The changes, although rather dramatic to the affected parcels, do not constitute a regional impact on the entire 946 acre DRI. Since the proposed changes do not have regional impact, they are not classified as "substantial deviations" and do not require further regional review. See § 380.06(1), and § 380.06(19), Fla. Stat. (2001).

The definition of changes classified as "substantial deviations."
A DRI is defined as "any development which, because of its character, magnitude, or location, would have a substantial effect upon the health, safety, or welfare of citizens of more than one county." § 380.06(1), Fla. Stat. (2001) (emphasis added). "Any proposed change to a previously approved development which creates a reasonable likelihood of additional regional [multi-county] impact, or any type of regional impact created by the change not previously reviewed by the regional planning agency, shall constitute a substantial deviation and shall cause the development *258 to be subject to further development-of-regional-impact review." § 380.06(19)(a), Fla. Stat. (2001) (emphasis added).
Reading these two statutes in pari materia, a substantial deviation is a change that, per se, creates reasonable likelihood that it will have a substantial effect on the health, safety or welfare of citizens of more than one county. Such a change is automatically required to undergo a new DRI review. Changes which meet this classification are expressly delineated. See § 380.06(19)(a)-(c), (e), Fla. Stat. (2001).
All other changes, whether statutorily enumerated or not, would be classified as "not a substantial deviation." See § 380.06(19)(e), Fla. Stat. (2001). Logically, because the changes in this case do not have regional (i.e., multi-county) impact, they are not required to undergo a new development of regional impact review process. See id.
Here, the parties stipulated that Appellant's proposed changes fall within this second classification. Although not a term used in the statute, the parties label the proposed changes "non-substantial." This label mainly serves as a convenience to indicate the project does not have a regional, or multi-county impact. The term does not lead to a conclusion that the proposed changes are minor, of no significance, or exempt from the Bay County Comprehensive Plan.

Only development rights originally approved are vested development rights.
Once a DRI has been approved, the right to develop pursuant to the terms of the DRI vests. See § 163.3167(8), Fla. Stat. (2001). Vesting means development rights obtained through a previously approved DRI are not lost by subsequent changes in the law. It does not, and cannot, create entitlement to greater rights than those originally obtained.[2] Accordingly, a proposed change jeopardizes vested rights because, by definition, the change seeks different development rights than those development rights originally approved.

The proposed changes.
Here, we are dealing with four parcels constituting approximately 16 acres of an original DRI containing 946 acres. Appellant owns only these 16 acres. Appellant's proposed changes significantly increase height limitations (from a maximum of five stories with a majority being two and three stories, to a maximum of 12 stories with the minimum being six stories), doubles residential density, and completely eliminates previously existing and originally approved recreational facilities. These changes are not insignificant.

The applicable statutes.
Three well-established principles of statutory construction mandate FLWAC be affirmed. First, where the language is clear and unambiguous, it must be given its plain and ordinary meaning. Second, no term should be rendered meaningless. Third, statutes which relate to the same subject must be read in pari materia and construed to give meaning and effect to each part. See Palm Beach County Canvassing Bd. v. Harris, 772 So.2d 1273, 1286 (Fla.2000).
*259 Here, the relevant statutes we must read in pari materia are sections 380.06(19)(f)6, 163.3194(1)(a), and 163.3167(8), Florida Statutes (2001). Section 380.06(19)(f)6, recognizes local government's authority to review and approve proposed changes to previously approved DRIs. The statute, in pertinent part, provides: "If the local government determines that the proposed change does not require further development-of-regional-impact review and is otherwise approved, ... the local government shall issue an amendment to the development order incorporating the approved change and conditions of approval relating to the change." Id. (emphasis added). The language "and is otherwise approved...." clearly and unambiguously requires a proposed change be subjected to, rather than exempted from, additional local approval even when no further DRI review is necessary. Similarly, the language "and conditions of approval relating to the change," clearly and unambiguously recognizes that a developer does not, per se, hold vested rights to proposed changes in a previously approved DRI simply because the changes do not require further DRI review. A vested right cannot be subject to "conditions of approval." This plain, statutory language requiring approval and recognizing the power of local government to condition that approval means Appellant's vested rights do not expand to include proposed changes.
Section 163.3194(1)(a), Florida Statutes (2001), provides: "After a comprehensive plan, or element or portion thereof, has been adopted in conformity with this act, all development undertaken by, and all actions taken in regard to development orders by, governmental agencies in regard to land covered by such plan or element shall be consistent with such plan or element as adopted." Id. (emphasis added). Based on this plain and unambiguous language, any development right not vested prior to the adoption of the comprehensive plan, must comply with the requirements of the comprehensive plan. Since "changes" cannot be vested, "changes" are included in the phrase "all development undertaken," and must comply with the local comprehensive plan.
Section 163.3167(8), Florida Statutes (2001) provides: "Nothing in this act shall limit or modify the rights of any person to complete any development that has been authorized as a development of regional impact pursuant to chapter 380...." Id. (emphasis added). Appellant's proposed development changes (an approximate 100% increase in residential units, more than doubling the height limitation, and eliminating all recreational uses) were never previously authorized. Thus, Appellant has no vested right to the significant development changes proposed. Its only vested development right is in completing development authorized by the original DRI.
When reading these sections in pari materia, an approved DRI creates vested rights to complete any development that "has been authorized." See § 163.3167(8), Fla. Stat. (2001). Proposed changes that are not required to undergo a new DRI permitting process, must be "otherwise approved" and may be subject to "conditions of approval." See § 380.06(19)(f)6., Fla. Stat. (2001). "All development" and "all actions taken in regard to development orders" "shall be consistent" with the comprehensive plan. See § 163.3194(1)(a), Fla. Stat. (2001). Stated more clearly: DRIs previously authorized may be completed, but changes must obtain approval, and must comply with the comprehensive plan.

Conclusion
Following an evidentiary hearing, the ALJ found the proposed changes were inconsistent *260 with the comprehensive plan. FLWAC held these findings were supported by competent, substantial evidence. Because FLWAC's decision is supported by competent, substantial evidence, and is based on a proper interpretation of the relevant statutes, we AFFIRM.
WOLF, C.J., ERVIN, BOOTH, ALLEN, WEBSTER, DAVIS, BENTON, VAN NORTWICK, PADOVANO, BROWNING, and POLSTON, JJ., concur.
KAHN, J., dissents with opinion in which BARFIELD and LEWIS, JJ., concur.
KAHN, J., dissenting.
The Governor and Cabinet sitting as the Florida Land and Water Adjudicatory Commission (FLWAC) have issued a final order declining to approve appellant Bay Point Club, Inc.'s Notice of Proposed Change (NOPC) to the Bay Point Yacht and Country Club Resort Development of Regional Impact (Bay Point DRI). This appeal questions FLWAC's application of statutory and case law to undisputed facts developed before an administrative law judge (ALJ). Our review is under the de novo standard. We should reverse with directions that the NOPC must be approved as a vested right of appellant Bay Point Club. I, therefore, dissent.

Background
The facts in this matter are gleaned primarily from the recommended order issued by an ALJ of the Division of Administrative Hearings. FLWAC's final order approved the ALJ's findings of fact and conclusions of law in their entirety.
The Bay Point DRI comprises 946 acres in Bay County. Development of the several parcels that comprise Bay Point began in the 1970s. The Bay Point DRI was originally approved in 1986, five years before Bay County adopted its first comprehensive plan in 1991 pursuant to the requirements of Chapter 163, Florida Statutes. Appellant Bay Point Club, Inc. owns parcels F, 12, 9, and 10 all located within the DRI.
When Bay County approved the DRI in 1986, such approval authorized the development of 2,161 residential units, 200 hotel units, 123 marina slips, and recreational facilities on the DRI's 946 acres. At the time of the original development order in 1986, the Bay Point Yacht and Country Club Resort was the sole developer of the DRI. Since that time, ownership and control of various parcels within the DRI have changed. Now multiple owners and developers have involvement in the 36 separate development areas or parcels contained within the DRI. Appellant owns the four parcels involved in the present case.
When Bay County adopted its first comprehensive plan in 1991, the county recognized and incorporated the Bay Point DRI through the adoption of an overlay to the future land use map (FLUM) delineating the boundaries of the property. Future Land Use Element Policy 3.4.5 of the Bay County plan recognizes the DRI and provides:
The Bay Point Development of Regional Impact (DRI) special treatment zone shall be established in order to ensure compatibility and consistency between the Bay Point DRI development order and the FLUM. Development in this area shall be governed by the DRI development order.
Parcels F and 12 were designated as "seasonal/resort" and parcels 9 and 10 were designated as "residential" on the FLUM. The designations remain in effect. As recognized by the ALJ, a seasonal/resort classification allows a broad range of uses such as beach houses, multi-family housing, condominiums, hotels, lodges, restaurants, *261 and other similar areas, while a residential classification permits land uses typically associated with residential occupancy.
Bay County has approved fifteen amendments to the Bay Point DRI development order since 1986. None of these changes constituted a "substantial deviation" requiring further DRI review under Chapter 380 of the Florida Statutes. § 380.06(19)(a), Fla. Stat. (2001). Bay County has never required a corresponding amendment to its comprehensive plan for any of these previous changes.
The NOPC issued by appellant affects the four parcels that it owns. Accordingly, a consideration of the history of these parcels is appropriate. The original DRI development order authorized construction of a 70-unit condominium building on parcel F with a maximum height of five stories. At the time of the original DRI order, tennis facilities existed on parcel F. The approved condominium building has never been built, and lack of membership support forced the closing of the tennis facilities in 2000.
Adjacent to parcel F lies parcel 12 on which a clubhouse, swimming pool, and other facilities had been built before approval of the Bay Point DRI. The DRI development order treated these improvements as existing vested uses and incorporated parcel 12 into the DRI. The clubhouse, however, closed in 1996 due to lack of membership support and has since been torn down.
Parcel 10 was originally approved as the site for a new sports center clubhouse. This clubhouse would have included golf, tennis, and health facilities. The DRI order envisioned a 14,000-square-foot clubhouse including a 90-seat restaurant, with a health club, and various related facilities and offices. These amenities have never been constructed.
The DRI order set aside parcel 9 as the site of a future Bay Point tennis center. Under the order, this center would have been comprised of fourteen tennis courts, with stadium stands for the center court. As with parcel 10, the proposed amenities for parcel 9 have never been built.
Appellant's NOPC proposes to leave parcels 9 and 10 undeveloped for passive recreational uses. Under the NOPC, appellant proposes to combine parcels F and 12 and to build on that site three condominium buildings with a total of 136 units and varying in height from six to twelve stories. This part of the proposed change would increase by 66 the number of condominium units previously approved on parcels F and 12, when compared with the original DRI order. With the additional 66 units, the total number of residential units in the Bay Point DRI would still be 79 fewer than the 2,161 units originally approved for the DRI because previous amendments cumulatively eliminated 145 residential units on other parcels of the DRI. Parcels F and 12, the site of the proposed 136-unit development here at issue, comprise collectively 8.8 acres. Parcels 9 and 10, which appellants propose to leave vacant for passive recreational uses, comprise approximately 10 acres.

Procedural History
Under chapter 380, Florida Statutes, any proposed change to a previously approved DRI "which creates a reasonable likelihood of additional regional impact, or any type of regional impact created by the change not previously reviewed by the regional planning agency, shall constitute a substantial deviation and shall cause the development to be subject to further development-of-regional-impact review." § 380.06(19)(a), Fla. Stat. (2001). Specific numerical thresholds appear in section 380.06(19)(b), Florida Statutes, applicable *262 to determination of whether a proposed change triggers the substantial deviation provisions of section 380.06.
Here, the West Florida Regional Planning Council, pursuant to its statutory duty of comment, advised Bay County that the NOPC initiated by appellant for parcels F, 12, 9, and 10 would not constitute a substantial deviation to the Bay Point DRI. The Department of Community Affairs, which under section 380.06(19)(f)4. is directed to file with local government any objections it may have to a proposed change, did not submit any such objections to Bay County. Under the statutory scheme, if the Department of Community Affairs had submitted objections, it would have done so before the public hearing at which the proposed change would be considered. § 380.06(19)(f)4., Fla. Stat. (2001).
In August and September 2001, the Bay County Board of County Commissioners conducted quasi-judicial public hearings on the NOPC. At the latter meeting, the commissioners denied the NOPC after a two-to-two tie vote on the question of whether the proposal constituted a substantial deviation. The County made no determination with respect to the question of whether the NOPC was consistent with Bay County's comprehensive plan.
After the County's denial, appellant initiated a proceeding before FLWAC under section 380.07, Florida Statutes (2001). Section 380.07(2) vests FLWAC with authority to review "any local government development order ... in regard to any development of regional impact...." Bay County, having denied the NOPC, was the original respondent before FLWAC. Very shortly, however, appellees Durden, Spencer, Sipple, Tutak, Hill, Hilton, and Fusselman, all of whom own property within the Bay Point DRI, were allowed to intervene, as was the Bay Point Community Association, Inc., the homeowners' association for the Bay Point DRI.
After the intervention orders, the most critical procedural development of this case occurred. All of the intervenors, as well as Bay County, abandoned any claim that the NOPC would constitute a substantial deviation requiring further DRI review by Bay County. This, of course, had been the sole issue decided by the local government proceeding. Accordingly, the only issue that proceeded before FLWAC was the new contention of appellees that the NOPC is inconsistent with Bay County's comprehensive plan.
The ALJ pointedly recognized and set forth in his recommended order the issue in this case:
In more simple terms, however, Intervenors object to any high-rise development in an area surrounded by single-family residential homes and in a community (Bay Point) where no other buildings exceed seven stories in height.
Before FLWAC, appellees contended that the NOPC would be inconsistent with several parts of Bay County's comprehensive plan. Nevertheless, all parties to this case have recognized that under the comprehensive plan, development in Bay Point is governed by the DRI development order. As the ALJ recognized, the conditions and restrictions on the use and development of parcels F, 12, 9, and 10, are incorporated into the County's comprehensive plan.
After the hearing, the ALJ reached several conclusions, all of which FLWAC ratified. The ALJ determined that because all of the proposed condominium buildings would exceed the five-story height limitation contained in the original DRI development order for parcel F, "the NOPC is inconsistent with policy 3.4.5." Accordingly, in the conclusions of law, the ALJ found the NOPC inconsistent with the comprehensive plan, including Policy 3.4.5, and *263 three other provisions, all based upon "height and mass." The ALJ recommended denial of the NOPC and FLWAC concurred.

Analysis
The determinative question in this appeal is whether appellant possesses vested rights under the DRI, so as to exempt the NOPC from the need to comply with the comprehensive plan for non-substantial deviations to the DRI. Both the ALJ and FLWAC were content with their determination that the NOPC would go beyond what was originally approved in the DRI development order of 1986. Countering this, appellant essentially argues that, assuming a non-substantial deviation under section 380.06(19), Florida Statutes (2001), will go beyond what was originally approved, the determinative issue should be whether the proposed change would require further DRI review under section 380.06. Appellant argues that if the change does not require further DRI review, then the DRI remains vested and the changes are exempt from complying with the comprehensive plan. I am persuaded by appellant's view of the law.
Because the decision below involves application of statutory provisions to undisputed facts, the standard of review is de novo. See Agency for Health Care Admin. v. Wilson, 782 So.2d 977 (Fla. 1st DCA 2001). Accordingly, this court may decide the legal issue of appellant's vested rights without deference to FLWAC's determination.
This case involves appellant's attempt to complete, or move toward completion, a previously authorized DRI. The review procedure conducted by FLWAC in this case did not involve a review of a comprehensive plan, or a comprehensive plan amendment, but rather, a proceeding "to ensure compliance with ... the requirements for developments of regional impact" set forth in chapter 380, Florida Statutes. § 380.07(1), Fla. Stat. (2001). Faced with a concession that the NOPC did not offend the requirements of chapter 380, FLWAC nevertheless proceeded to rule that the proposed development would contravene Bay County's comprehensive plan, established and approved pursuant to the Florida Local Government Comprehensive Planning and Land Development Regulation Act, sections 163.3161-.3215, et seq, Florida Statutes (2001). In my view, the proceedings conducted by, and the result arrived at by FLWAC, stand at odds with the authority devolved upon FLWAC for review of a DRI amendment.
The governing statute provides "the Florida Land and Water Adjudicatory Commission shall issue a decision granting or denying permission to develop pursuant to the standards of this chapter and may attach conditions and restrictions to its decisions." § 380.07(5), Fla. Stat. (2001). I would find, in the context of an appeal of a DRI development order, the authority of FLWAC is as delineated in the statute, and should be limited to a determination of whether the proposed amendment meets the standards of chapter 380. The excursion of FLWAC in this case completely circumvented any local government review for consistency with the Bay County Comprehensive Plan.
In essence, FLWAC engaged in a consistency challenge involving Bay County's comprehensive plan and ultimately found that the proposed development would actually be inconsistent with the DRI itself. Doubtless, appellees will dispute this characterization. Nevertheless, we cannot help but note that the only individuals and groups actively challenging the NOPC before FLWAC and this court are themselves residents of the DRI, and not of surrounding parts of Bay County. Moreover, the inconsistencies noted by the ALJ, *264 and adopted by FLWAC, are supposed inconsistencies within the DRI, and not inconsistencies between the proposed changes to the DRI and the comprehensive plan for neighboring areas of Bay County outside the Bay Point DRI.
The Local Government Comprehensive Planning and Land Development Regulation Act, under which the various comprehensive plans for Florida counties have been developed and approved, recognizes the vested rights of entities seeking to complete the development of a previously existing DRI. Under the statutory section entitled "Scope of Act," the comprehensive planning law states: "Nothing in this act shall limit or modify the rights of any person to complete any development that has been authorized as a development of regional impact pursuant to chapter 380 or who has been issued a final local development order and development has commenced and is continuing in good faith." § 163.3167(8), Fla. Stat. (2001). In this case, the precise issue is whether the vested rights created by section 163.3167(8) inure to the benefit of appellant, or whether the nature of the NOPC advanced by appellant extinguishes its vested rights. No issue exists in this case as to whether development has commenced and is continuing in good faith.
The issue upon which I disagree with the majority is whether a proposed change to a DRI, when such change does not constitute a substantial deviation, as that term is used in section 380.06, is entitled to the protection of section 163.3167(8). To answer this question, I would turn to, rather than overrule, our decision in Edgewater Beach Owners Ass'n v. Walton County, 833 So.2d 215 (Fla. 1st DCA 2002), review denied, 845 So.2d 889 (Fla.2003). Edgewater holds that a DRI approved before the adoption of a county's comprehensive plan is entitled to the vested rights of section 163.3167(8), Florida Statutes, and is therefore exempt from complying with the comprehensive plan for any changes to the DRI that do not constitute substantial deviations. Edgewater, 833 So.2d at 222.
The development at issue in Edgewater involved a 476-unit condominium project approved by Walton County as a DRI in 1982 before the county adopted its comprehensive plan. Id. at 217. The developer completed the first two phases of the six-phase project by 1984, but no development took place afterwards, and the development order expired in 1992. Id. Walton County, in 1993, adopted a comprehensive plan imposing a four-story height restriction and limiting density to twelve units per acre. Id. The Edgewater developers proposed construction of two twenty-story condominium towers. Id. The NOPC in Edgewater was patently inconsistent with the Walton County Comprehensive Plan. Nevertheless, in 1993, the county approved the developer's NOPC seeking to extend the termination date of the development order, to reduce the density in Phase III, and to develop Phases IV, V, and VI at the originally approved levels. Id. at 218. The county allowed these changes based upon the developers' vested rights under section 163.3167(8). Id.
An adjoining homeowners' association challenged the approval based upon inconsistency with the comprehensive plan. Id. at 218-19. The case was heavily litigated on the question of the association's standing. Ultimately, this court found that the association did in fact have standing for various reasons, including the assertion that "members' ocean views would be blocked by the development which would lower the members' property values.... [T]he proposed development would place some of the Association's recreational facilities in the shade until noon." Id. at 220. *265 This court then conducted a de novo review on the question of whether the development was vested under section 163.3167(8). Id.
We determined that section 163.3167(8) "is clear and unambiguous and should be given its plain meaning." Id. at 220-21. We reviewed the legislative history of section 163.3167 and determined:
In 1975, the Legislature created section 163.3167 and provided that "[n]othing shall limit or modify the rights of any person to complete any development that has been authorized as a Development of Regional Impact pursuant to chapter 380." See Ch. 75-257, § 4, at 799, Laws of Fla. In its creation of the vesting provision, the Legislature did not require that a DRI development must commence and continue in good faith for the developer to maintain its right to develop the DRI.
Id. at 221-22. We then reached the holding that controls the present matter:
As the present case involves a development of regional impact, section 163.3167 must be read in pari materia with the requirements of section 380.06, Florida Statutes (1995). Section 380.06 outlines the procedures for review and approval of a development of regional impact. Once approved as a DRI and a development order has been issued authorizing development, a project need not be subject to additional DRI review and approval under section 380.06 unless an amendment to the project involves a substantial deviation. § 380.06(19), Fla. Stat. (1995).
Id. at 222 (citations omitted).
In Edgewater, of course, "the County specifically found ... that the amendments were not substantial deviations requiring further DRI review." Id. As in the present case, the aggrieved property owners did not challenge that particular issue. Id. We noted that because the amendments "did not require further DRI review, the project did not lose its original authorization for DRI development." Id. We observed that section 163.3167(8) provides to developers vested rights to complete "any development that has been authorized." Id. We noted that, given the plain meaning of the word "any," "vesting attaches once the original DRI development order authorizes development." Id. We then explained:
This vesting would continue until the development was subjected to another DRI review. That is, non-substantial deviations to the original DRI development order would not cause loss of the vesting rights to the original development plan.
Id. We ultimately held that the developers in Edgewater did not lose any vesting rights to the original development plan because the NOPC's in that case were non-substantial deviations. Id. at 223.
Appellees would have us distinguish Edgewater because in the present case the NOPC involves additional development of two of the four parcels, while in Edgewater the original DRI order had contemplated the twenty-story towers that the Edgewater developers later proposed. I find this difference inconsequential given the fact that the challengers' complaint in the present case is exactly the same as the complaint in Edgewater  owners who have already bought residential units object, after the developer proposes construction of high-rise condominiums on property owned by the developer, subject to a pre-existing DRI order, and which development does not constitute a substantial deviation under section 380.06(19), Florida Statutes (2001).
I further find that Bay County's Future Land Use Element 3.4.5 harmonizes with the vesting rights provision of section *266 163.3167(8). In developing its comprehensive plan, the County recognized that development in the Bay Point DRI would be governed by the pre-existing DRI development order. Accordingly, any rights held by the developer, or the developer's successors, under the DRI development order would not be sacrificed to an after-enacted comprehensive plan. Such is consonant with the Legislature's determination in section 163.3167(8) not to further limit the property rights of one already subject to a previously authorized DRI. Because appellees in the present case are unable to demonstrate that appellant would need further DRI authorization to conduct the activities set out in the NOPC, appellant is entitled to the vesting provision of section 163.3167(8) and FLWAC erred by holding otherwise.

Conclusion
It is bad enough that the majority opinion obliterates appellant's legitimate property rights. The "insult to injury" aspect of this case is even worse. Underlying the majority's rationale is the assertion that "a proposed change is subjected to, rather than exempted from additional local approval even when no further DRI is necessary." Majority Op. at 259. The point here is that no effective local review has ever taken place in this case. The only local review took place before the Bay County Commission, and the result was so completely unsupportable that it was abandoned by appellees, who took a completely different position when protesting the proposed development before FLWAC. Rather than vindicating any local government rights to control development, the majority opinion bestows that right upon the most centralized institution conceivable, the Governor and the Cabinet. I would reverse FLWAC's order and direct that this matter be remanded to the local government for issuance of the development order sought by appellant.
NOTES
[1] Appellant owns only four parcels (F, 9, 10, and 12), which comprise approximately 16 acres of a 946 acre development. The proposed changes are to these four parcels.
[2] The dissent's conclusion that this opinion "obliterates appellant's legitimate property rights" is puzzling. Appellant never possessed a property right to the changes it now seeks. Rather, its only "legitimate property right" was in developing its property as originally approved by the DRI.