971 So.2d 171 (2007)
James Craig DUNLAP, et al., Appellant,
v.
ORANGE COUNTY, Florida, etc., Appellee.
No. 5D06-4059.
District Court of Appeal of Florida, Fifth District.
December 28, 2007.
*172 Aristides J. Diaz, of Diaz & Moss, Orlando, for Appellant.
Joel D. Prinsell, Deputy County Attorney and Anthony J. Cotter, Assistant County Attorney, Orlando, for Appellee Orange County, Florida.
Howard S. Marks and Douglas K. Gartenlaub, of Graham, Builder, Jones, Pratt & Marks, L.L.P., Winter Park, for Appellee M/I Holmes, Inc.
PALMER, C.J.
James and Sylvia Dunlap, Chris and Rhoni Bischoff, Cal and Carol Paris, and Dan and Katrina Rini (homeowners) appeal the final order entered by the trial court dismissing with prejudice the complaint they filed against Orange County. Determining that the trial court erred in determining (1) that the homeowners lack standing to prosecute their lawsuit, and (2) that they failed to properly preserve their legal argument, we reverse.
The homeowners filed a declaratory judgment action against Orange County in connection with two construction permits which the County had issued allowing M/I Homes to build a boat ramp in a residential subdivision. The complaint sets forth the following allegations of fact.
Each of the plaintiffs are homeowners residing on lake-front property on Corner Lake in Orange County. M/I Homes is developing a single-family residential development on the shores of Corner Lake. The development is known as Country Lake Estates. M/I Homes has plans to construct a semi-private boat ramp in connection with its development of Country Lake Estates and the boat ramp will be accessed and used only by the owners of homes in Country Lake Estates.
M/I Homes purchased the rights to develop Country Lake Estates from White Mark Homes, Inc. White Mark Homes had taken the subdivision through the planned development zoning process in Orange County; however, M/I Homes recorded the plat for Country Lake Estates after the plat received approval from the Orange County Board of County Commissioners (BCC) in December of 2003.
In 2004, without applying for or receiving a conservation area impact permit or a boat ramp construction permit, M/I Homes started constructing a boat ramp in Country Lake Estates. Orange County fined M/I Homes for violating the permitting requirements by commencing construction of the boat ramp without obtaining the necessary permits. M/I Homes also placed signs at the entrance of Country Lakes Estates which stated that the homes were selling with access to a boat ramp. Orange County also fined M/I Homes for this advertising.
M/I Homes then filed applications for a conservation area impact permit and a boat ramp construction permit. BCC held a public hearing on said applications and thereafter voted in favor of granting both of M/I Homes' permit applications. Once M/I Homes' permit applications were approved, the homeowners filed this lawsuit challenging BCC's approval of the permit applications.
*173 In seeking declaratory relief, the homeowners' complaint alleges that BCC's vote approving M/I Homes' permit applications was void because the boat ramp plans are inconsistent with Orange County's Comprehensive Plan. Orange County responded to the homeowners' complaint by filing a motion to dismiss. The motion alleged that dismissal of the homeowners' complaint was warranted because the homeowners failed to allege in their complaint that they had raised the issue of whether M/I Homes' boat ramp construction plans were consistent with the County's Comprehensive Plan during the public hearing.
Soon thereafter, M/I Homes filed a motion to intervene in the instant lawsuit. The trial court granted the motion. M/I Homes then filed a motion to dismiss the homeowners' complaint arguing that the homeowners lacked standing to challenge BCC's permit application approvals.
The parties consented to send the matter to the general magistrate for consideration of the factual issues. At the hearing held by the general magistrate, Orange County presented its waiver claim, arguing that the homeowners' complaint should be dismissed because, during BCC's public hearing, the homeowners never contended that approval of M/I Homes' permit applications would be inconsistent with Orange County's Comprehensive Plan. Counsel for the homeowners responded by arguing that the instant lawsuit was entitled to receive a de novo trial and, therefore, any and all issues could be raised for the first time in the trial court. Upon review, the general magistrate entered a report concluding that Orange County's motion to dismiss should be granted. The trial court entered an order adopting the general master's report.
The homeowners thereafter filed an amended complaint. Orange County responded to the homeowners' filing of their amended complaint by filing a motion to dismiss. The motion alleged that the amended complaint was subject to dismissal because it failed to set forth any allegations indicating that the homeowners had raised the issue of the alleged inconsistency between the County's Comprehensive Plan and BCC's approval of M/I Homes' permit applications during the public hearing. M/I Homes filed a separate motion to dismiss the homeowners' amended complaint. The motion joined in the waiver argument set forth by Orange County and also alleged that the complaint should be dismissed because the homeowners lack standing to challenge BCC's permit approvals "as they are only nearby citizens".
The matter proceeded a second time to a hearing before the general magistrate. Upon review, the general magistrate concluded:
The court finds that the amended complaint does not allege that the inconsistency was raised at the county court [sic] level. So, the motion to dismiss should be granted with prejudice. The court also finds that the intervener's motion on standing has merit and that these parties did not have standing to bring this action. For that reason also the court would dismiss complaint.
The trial court ratified the general magistrate's order and dismissed the homeowners' amended complaint with prejudice. This appeal timely followed.
In challenging the instant dismissal order, the homeowners first argue that the trial court erred in dismissing their complaint on the basis that they lack standing to prosecute this lawsuit under section 163.3215 of the Florida Statutes (2004). We agree.
Section 163.3215(2) of the Florida Statutes (2004) authorizes an "aggrieved or adversely affected" party to maintain an *174 action to determine whether development orders (in this case, M/I Homes' construction permits) are consistent with a County's comprehensive plan. The statute reads, in relevant part, as follows:
163.3215. Standing to enforce local comprehensive plans through development orders
* * *
(2) As used in this section, the term "aggrieved or adversely affected party" means any person or local government that will suffer an adverse effect to an interest protected or furthered by the local government comprehensive plan, including interests related to health and safety, police and fire protection service systems, densities or intensities of development, transportation facilities, health care facilities, equipment or services, and environmental or natural resources. The alleged adverse interest may be shared in common with other members of the community at large but must exceed in degree the general interest in community good shared by all persons. The term includes the owner, developer, or applicant for a development order.
§ 163.3215(2), Fla. Stat. (2004). In Education Development Center, Inc. v. Palm Beach County, 751 So.2d 621, 623 (Fla. 4th DCA 1999), the court explained:
As a remedial statute, section 163.3215 should be liberally construed to advance the intended remedy, i.e., to ensure standing for any party with a protected interest under the comprehensive plan who will be adversely affected by the governmental entity's actions. Parker v. Leon County, 627 So.2d 476, 479 (Fla. 1993); see Dotty v. State, 197 So.2d 315 (Fla. 4th DCA 1967)(remedial statutes are generally construed liberally).
In Stranahan House, Inc. v. City of Fort Lauderdale, 967 So.2d 427 (Fla. 4th DCA 2007), Stranahan House, Inc., and Friends of the Park at Stranahan House appealed the trial court's dismissal order entered in favor of the City of Fort Lauderdale and Coolidge-South Markets Equities, L.P., in a section 163.3215 action. In reversing the dismissal order, the Fourth District held, among other things, that Stranahan and Friends possessed standing to maintain the lawsuit.
In that case, Stranahan filed a complaint for declaratory and injunctive relief against the City and Coolidge pursuant to section 163.3215 of the Florida Statutes (2006), challenging the City Commission's approval of a building site plan. The City filed a motion to dismiss the complaint and the motion was granted. On appeal, Coolidge asserted, inter alia, that both Stranahan and Friends lacked standing to challenge the City's approval of the site plan because they were not "aggrieved or adversely affected parties" as required under section 163.3215. The Fourth District rejected the argument, holding:
In the present case, Stranahan's complaint alleges that Stranahan, as the adjoining property owner, will be negatively affected by "increased traffic and the activity, lights, alteration of Stranahan's enjoyment of light and air, the visual and audio pollution caused by the development and the effect of the shadow cast over the Stranahan property at certain times of the year." Stranahan also alleged it was negatively affected by the City's failure to submit the alternative site plan to the historical preservation board for review and comment under the provisions of the comprehensive plan designed to evaluate the impact of such projects on historical sites. A purpose of Friends is to protect Stranahan House as a historical resource. Stranahan and Friends meet the test for standing outlined in Florida Rock Properties v. Keyser, 709 So.2d 175, 177 (Fla. 5th *175 DCA 1998). The interests alleged are protected by the City's Comprehensive Plan, they are greater than the general interest in community well-being, and the interests will be adversely affected by the development.
We conclude that, as was the case in Stranahan House, the instant homeowners have met the test for standing because the interests which they allege in their amended complaint are protected by the County's Comprehensive Plan and, as owners of property fronting the lake on which Country Lake Estates is being developed, their interests will be affected by M/I Homes' boat ramp construction to an extent which is greater than those held by general members of the community who do not own such lake-front property. Accordingly, the trial court's ruling that the homeowners lack standing to challenge the issuance of M/I Homes' construction permits is reversed.
The homeowners further argue that the trial court erred in concluding that section 163.3215, Florida Statutes, only authorizes a de novo appeal (not a de novo trial), to parties seeking to challenge a development order pursuant to the terms of the statute. We again agree.
"The interpretation of a statute is a purely legal matter and therefore subject to the de novo standard of review." Kephart v. Hadi, 932 So.2d 1086, 1089 (Fla. 2006).
Section 163.3215 of the Florida Statutes (2004) reads, in pertinent part:
163.3215. Standing to enforce local comprehensive plans through development orders
(1) Subsections (3) and (4) provide the exclusive methods for an aggrieved or adversely affected party to appeal and challenge the consistency of a development order with a comprehensive plan adopted under this part.
* * *
(3) Any aggrieved or adversely affected party may maintain a de novo action for declaratory, injunctive, or other relief against any local government to challenge any decision of such local government granting or denying an application for, or to prevent such local government from taking any action on, a development order, as defined in s. 163.3164, which materially alters the use or density or intensity of use on a particular piece of property which is not consistent with the comprehensive plan adopted under this part. The de novo action must be filed no later than 30 days following rendition of a development order or other written decision, or when all local administrative appeals, if any, are exhausted, whichever occurs later.
§ 163.3215(1), (3) Fla. Stat. (2004).
Here, the trial court approved the legal conclusions reached by the general master that (1) the language set forth in subsection 1 of the statute authorizes parties to receive a de novo appeal, not a de novo trial, when seeking review of a development order because subsection 1 of the statute reads: "to appeal and challenge", and, (2) the homeowners' complaint was subject to dismissal on the basis that they waived the right to raise any challenge regarding the inconsistency between the County's Comprehensive Plan and BCC's approval of M/I Homes' permit applications by failing to raise the issue during BCC's public hearing. However, our reading of the statutory language leads us to the conclusion that an action filed pursuant to section 163.3215(3) of the Florida Statutes is in the nature of a de novo trial, not a de novo appeal. Subsection 1 defers to subsection 3 and subsection 4 as the exclusive methods of asserting challenges such *176 as the one brought by the homeowners here. Subsection 4 involves a traditional certiorari "appeal," but only applies where the local government has by ordinance adopted a procedure for challenging its decisions in a quasi-judicial administrative action that meets all the requirements of that subsection. The reference to an "appeal" in subsection 1 logically refers to the appeal expressly referenced as the means of challenging a decision rendered after a hearing pursuant to subsection 4. By contrast, subsection 3 explicitly provides the right to a de novo "action," not to a more limited appellate action. As such, the trial court's ruling dismissing the homeowners' amended complaint on the basis of waiver is reversed. See 5220 Biscayne Blvd., LLC v. Stebbins, 937 So.2d 1189, 1191 (Fla. 3d DCA 2006)(explaining that the "2002 amendment to section 163.3215 was intended to simplify the time limit for bringing the de novo action to challenge a development order by requiring that the action be filed within thirty days of rendition of the development order").
REVERSED and REMANDED.
PLEUS and LAWSON, JJ., concur.