PLEUS, J.,
dissenting.
I dissent. The able and sage trial judge understood the case law and applied it properly. He correctly dismissed this case with prejudice for lack of standing because the plaintiffs repeatedly failed to allege any adverse effects, impact or harm they would suffer from the proposed development that was unique to them. Without it being unique to them, their interest cannot exceed in degree the general interest in the community good shared by all persons. The majority opinion eviscerates the “ad *341 verse effect” element of the standing requirement in subsection 163.3215(2), Florida Statutes, and stands in direct conflict with the case law interpreting that statute.
Subsection 163.3215(2) defines an “aggrieved or adversely affected party” as “any person or local government which will suffer an adverse effect to an interest furthered by the local government comprehensive plan.... ” (Emphasis added). It further states that “[t]he alleged adverse interest may be shared in common with other members of the community at large but must exceed in degree the general interest in community good shared by all persons.” (Emphasis added).
The cases discussing this section have uniformly interpreted it as requiring factual allegations that plaintiffs will suffer adverse effects and that those adverse effects will be greater than those suffered by the community at large. See Dunlap v. Orange County, 971 So.2d 171 (Fla. 5th DCA 2007); Stranahan House, Inc. v. City of Fort Lauderdale, 967 So.2d 427 (Fla. 4th DCA 2007); Payne v. City of Miami, 927 So.2d 904 (Fla. 3d DCA 2005); Edgewater Beach Owners Ass’n, Inc. v. Walton County, 833 So.2d 215 (Fla. 1st DCA 2002), receded from on other grounds, Bay Point Club, Inc. v. Bay County, 890 So.2d 256 (Fla. 1st DCA 2004); Putnam County Envtl. Council, Inc. v. Bd. of County Comm’rs, 757 So.2d 590, 592-93 (Fla. 5th DCA 2000) Florida Rock Props. v. Keyser, 709 So.2d 175, 177 (Fla. 5th DCA 1998); Pichette v. City of N. Miami, 642 So.2d 1165 (Fla. 3d DCA 1994); Sw. Ranches Homeowners Ass’n, Inc. v. Broward County, 502 So.2d 931 (Fla. 4th DCA 1987).
Florida Rock, in my view, is a correct analysis of the statute. It tells us two things. Owning real property in the vicinity of the rezoning, and being concerned about the effects of the rezoning, is not sufficient to confer jurisdiction. The rezoning must have a specific impact or involve some harm on or to the property owner or his property.
For example, in Dunlap, this Court concluded that the plaintiffs had standing in part because “as owners of property fronting the lake on which Country Lake Estates is being developed, their interests will be affected by M/I Homes’ boat ramp construction to an extent which is greater than those held by general members of the community who do not own such lake-front property.” 971 So.2d at 175.
In Stranahan House, the Fourth District held that the plaintiff sufficiently pled an adverse effect by alleging that as the adjoining property owner, Stranahan House would be negatively affected by “increased traffic and the activity, lights, alteration of Stranahan’s enjoyment of light and air, the visual and audio pollution caused by the development and the effect of the shadow cast over the Stranahan property at certain times of the year.” 967 So.2d at 433-34.
In Payne, the Third District found that the plaintiffs had sufficiently alleged that they would suffer “adverse effects, exceeding the general interests shared by the community at large,” by alleging they would suffer specific injuries to their ability to conduct business along the river due to depletion of available sites for marine industrial use by the conversion of industrial land to residential and commercial uses. 927 So.2d at 909.
In Edgewater Beach, the First District found that the plaintiff homeowners association demonstrated standing at trial by testifying that an adjacent proposed development would block members’ ocean views, thereby reducing their property values, and it would place their recreational facilities in shade until noon. 833 So.2d at 220.
*342 In Putnam County Envtl. Council, this Court held that the plaintiff organization sufficiently alleged adverse effects by asserting “specific injuries” it would suffer, including destruction of the habitat of species its members studied and elimination of members’ access to the forest and its creatures by overgrowth from discontinuation of controlled burns. 757 So.2d at 593. This Court concluded that such alleged adverse effects were “particular” to the plaintiff organization, making it more than just a group with amorphous environmental concerns. Id.
In Florida Rock, this Court held that the plaintiff lacked standing because he failed to show that he would suffer an adverse effect or specific injury from the proposed development. Although the plaintiff alleged generally that the proposed development would “affect his quality of life” and that the County would not be as bucolic as it once was, this Court noted that the alleged injury should be “unique” and “specific” to the plaintiff. It further instructed, “Had Keyser lived adjacent to the property, and had he been able to show a specific impact the zoning change would have upon him or his property, he would have standing.” 709 So.2d at 177.
In Pichette, the Third District affirmed a summary judgment for lack of standing because the plaintiffs failed to demonstrate that they would be affected by “noise, traffic impact, land value diminution, or and any other respect by the proposed zoning ordinance.” 642 So.2d at 1166.
In Southwest Ranches, the Fourth District held that the plaintiffs sufficiently alleged standing by asserting that they were a group of landowners who would be directly affected by a proposed adjacent landfill’s pollution, flooding and deterioration of the potable water supply. 502 So.2d at 934-35.
In the instant case, the plaintiffs failed to allege that they would suffer any adverse effect from the proposed development, much less any that would affect them to a greater degree than the community at large. The complaint alleges that the individual plaintiffs will suffer harm because the proposed development will increase demands on the potable water, sewer, traffic, evacuation, police and infrastructure systems. Simply alleging that development will increase demands on various resources does not equate to an adverse effect on an individual plaintiff. Instead, the complaint must allege ultimate facts showing how or why increased demands will result in adverse impacts to the plaintiffs. See Fla. R. Civ. P. 1.110(b) (requiring a “short and plain statement of ultimate facts showing pleader is entitled to relief’); Williams v. Howard, 329 So.2d 277 (Fla.1976) (noting that a “bare assertion” that one’s legal rights will be affected, without alleging how or why, is not sufficient to establish standing to file a declaratory judgment action).
For example, will the increased numbers of people and demands arising from the proposed development degrade the plaintiffs’ water quality? Will they reduce the plaintiffs’ access to potable water? Will they increase the price plaintiffs pay for potable water? Will they reduce plaintiffs’ access to fishing, boating and other activities in the Homosassa River? Will they cause increased response times from police and fire to plaintiffs’ residences? Will they prevent plaintiffs from timely evacuating in an emergency? And, if so, how are any of these adverse effects suffered by the plaintiffs to a greater degree than the community at large? The complaint fails to allege any ultimate facts demonstrating that the plaintiffs will suffer adverse effects, much less adverse effects greater than the community at large.
*343 The complaint also alleges that the Alliance and the individual plaintiffs will be adversely affected because their “investment of resources and volunteer activities” to protect the river, educate the public and encourage responsible development will be “for naught” if the County continues to allow development that is inconsistent with the Comprehensive Plan. A similar argument was soundly rejected by the United States Supreme Court in Sierra Club v. Morton, 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972), a case this Court followed in Florida Rock. There, the Sierra Club had attempted to establish standing under a similar statutory requirement in the Administrative Procedure Act that it allege an “adverse effect.” Discussing the purpose for this requirement, the Court stated:
The requirement that a party seeking review must allege facts showing that he is himself adversely affected does not insulate executive action from judicial review, nor does it prevent any public interests from being protected through the judicial process. It does serve as at least a rough attempt to put the decision as to whether review will be sought in the hands of those who have a direct stake in the outcome. That goal would be undermined were we to construe the APA to authorize judicial review at the behest of organizations or individuals who seek to do no more than vindicate their own value preferences through the judicial process.
Id. at 1368-69 (footnote omitted; emphasis added).
In this case, the majority concludes without any supporting analysis that the plaintiffs sufficiently allege that they will be “adversely affected by allowing a development that violates the plan.” The majority’s conclusion suffers from the same fatal flaw as the complaint itself — it is unsupported by any allegations of ultimate facts showing how or why the alleged violations will adversely affect the plaintiffs, and do so to a greater degree than the community at large.
More troubling is the majority’s contradictory statement that a showing of harm is not required at all. It states:
An interpretation of the statute that requires harm different in degree from other citizens would eviscerate the statute and ignore its remedial purpose. It drags the statute back to the common law test. The Statute is designed to remedy the governmental entity’s failure to comply with the established comprehensive plan, and, to that end, it creates a category of persons able to prosecute the claim. The statute is not designed to redress damage to particular plaintiffs. To engraft such a “unique harm” limitation onto the statute would make it impossible in most cases to establish standing and would leave counties free to ignore the plan because each violation of the plan in isolation usually does not harm the individual plaintiff. Rather, the statute simply requires a citizen/plaintiff to have a particularized interest of the kind contemplated by the statute, not a legally protectable right.
This analysis is incorrect. By interpreting the statute as requiring only a particularized interest and not a particularized harm, it contravenes the plain language of the statute and conflicts with prior case law from this and other districts. It also leads to the danger described by the Supreme Court in Morton, as follows:
It is clear that an organization whose members are injured may represent those members in a proceeding for judicial review. See, e.g., NAACP v. Button, 371 U.S. 415, 428, 83 S.Ct. 328, 335, 9 L.Ed.2d 405. But a mere “interest in a problem,” no matter how longstanding *344 the interest and no matter how qualified the organization is in evaluating the problem, is not sufficient by itself to render the organization “adversely affected” or “aggrieved” within the meaning of the APA. The Sierra Club is a large and long-established organization, with a historic commitment to the cause of protecting our Nation’s natural heritage from man’s depredations. But if a “special interest” in this subject were enough to entitle the Sierra Club to commence this litigation, there would appear to be no objective basis upon which to disallow a suit by any other bona fide “special interest” organization however small or short-lived. And if any group with a bona fide “special interest” could initiate such litigation, it is difficult to perceive why any individual citizen with the same bona fide special interest would not also be entitled to do so.
Id. at 739-40, 92 S.Ct. 1361.
As discussed above, Florida case law clearly requires more concrete injury than that alleged by the Plaintiffs. On this point the U.S. Supreme Court has previously recognized the requirement of an injury is specific — it requires a “concrete and particularized” injury in fact which “must affect the plaintiff in a personal and individual way,” does not allow legal redress for any imaginable injury, and is not “an ingenious academic exercise in the conceivable.” Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, 566, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). In Lujan, Justice Scalia expressed doubts that the Defenders of Wildlife had alleged sufficient injury to demonstrate standing, simply because a person’s aesthetic viewing of a particular species in a particular area of the world was in danger of becoming less pleasurable. Id. at 566, 112 S.Ct. 2130. This argument is “pure speculation and fantasy.” Id. To be sure, the Court opined that if a person could show they were observing a threatened species in a particular area of the world and that specific area was threatened, it was “plausible — though it goes to the outermost limit of plausibility” that such a person might have standing. Id. In this case, although the aesthetic viewing argument expressed by the Plaintiffs in this case stretches plausibility for the same reasons, it is somewhat closer to satisfying the constitutional requirement of standing because of Plaintiffs’ demonstrated proximity. However, there is an additional problem with Plaintiffs’ argument. To demonstrate such an injury, the party seeking redress must state “specific facts” demonstrating “that one or more of respondents’ members would thereby be directly affected” by the challenged action. Id. at 563, 112 S.Ct. 2130. This was not accomplished here. Plaintiffs’ bare-bones allegations that the increases in density will affect their use of the river is, without more, “pure speculation and fantasy” and is insufficient to show the requisite actual, concrete injury.
Because the Second Amended Complaint was fatally defective, the trial judge did not abuse his discretion in dismissing it with prejudice. The standard for reviewing a lower court’s dismissal with prejudice is abuse of discretion. Sonny Boy, L.L.C. v. Asnani, 879 So.2d 25, 28-29 (Fla. 5th DCA 2004). Refusal to allow amendment of a pleading constitutes an abuse of discretion unless it clearly appears that allowing the amendment would prejudice the opposing party, the privilege to amend has been abused, or amendment would be futile. Id. While amendments should generally be liberally granted so that cases may be concluded on their merits, “there is an equally compelling obligation on the court to see to it that the end of all litigation be finally reached.” Price v. Morgan, 436 So.2d 1116, 1122 (Fla. 5th DCA 1983). *345 Thus, “a trial judge in the exercise of sound discretion may deny further amendments where a case has progressed to a point that liberality ordinarily to be indulged has diminished.” Id.
The trial court’s order denying motion for rehearing demonstrates that dismissal with prejudice was appropriate in this case because further amendment would be futile and would cause prejudice to the defendants. It states:
After extensive argument on the defendant’s and intervenor’s motions to dismiss plaintiffs’ Amended Complaint at which time it was thoroughly explained why the facts urged by plaintiffs did not meet the requirements for standing, the court dismissed plaintiffs’ complaint but with leave to amend. Although the court inquired at that hearing what additional facts plaintiffs might be able to allege on amendment, plaintiffs’ counsel objected to “going outside the record” and insisted that the court rule on the four corners of the complaint. The court gave plaintiffs the benefit of the doubt that they might have additional facts bearing on standing that could be alleged and permitted an amendment.
Plaintiffs’ second amended complaint also failed to allege sufficient facts showing that plaintiffs were any more affected by the challenged action of the County Commission than any other member of the community. And this is understandable. Plaintiffs cannot invent facts. They now live no closer to the project so that its noise affects them and the shadows case by the buildings still does not fall on plaintiffs’ property.
Although there was no contention before the County Commission that the project would affect the quality of the water in the Homosassa River, plaintiffs are unable to allege any greater right to the river than the general public. And although the number of units may permit some growth in the area and the buildings may not be consistent with the character of Old Homosassa, these allegations affect all of the citizens in Old Homosassa equally.
When delay will prevent the construction of an approved but undesired development, then one may win by losing if the losing process is sufficiently long. In this case, it has been long enough. Plaintiffs have had ample opportunity to show standing if they could. Further delay will not help them.
The plaintiffs in this case made three attempts to plead standing and they failed. “Generally three ineffective attempts to state the same cause of action are enough.” Henry P. Trawick, Jr., Florida Practice and Procedure § 14-3 at 267 (2007-08 ed.). Most trial judges use the “three strikes and you’re out” standard. The record amply demonstrates that the plaintiffs were incapable of pleading sufficient ultimate facts to confer standing. As the trial court noted above, at the hearing on the First Amended Complaint, the court asked the plaintiffs’ attorney what additional facts could be alleged and she objected to going “outside the record.” Nevertheless, the court entered an order explaining why the complaint was deficient and gave the plaintiffs an opportunity to allege additional ultimate facts. The plaintiffs then filed the Second Amended Complaint, which was also deficient. At the hearing on the motion to dismiss that complaint, plaintiffs’ counsel candidly stated:
[W]e wouldn’t have the second amended complaint, had they not filed a motion to dismiss. What they have been successful in doing is creating — you know, basically making sure that we have a non-assailable complaint once it’s time for the matter to be finally resolved, be *346 cause we have now had two opportunities to dot all the I’s and cross all the T’s after they have alleged we missed some of those.
At no time, either in their motion for rehearing or in this appeal, have the plaintiffs demonstrated what further amendment would be made if given another opportunity to amend. See Price, 436 So.2d at 1122 (noting that appellants failed to demonstrate what further amendment could be made if given the opportunity). Based on the trial judge’s reasoning and the record facts supporting it, the plaintiffs have failed to prove that he abused his discretion in dismissing the case with prejudice. To conclude otherwise, as the majority does, is simply to ignore the appellate standard which we are bound to follow.
I feel compelled to add the following observations from my experience in this area of the law.
No doubt the plaintiffs in this case are honest, sincere people who care deeply about the future of the Homosassa River. My remarks about certain so-called “environmentalists gadflies” should not be interpreted as a reference to them.
The opinion of Judge Griffin will be cited and used to open the floodgates to the environmental gadflies of the world. They will file spurious complaints which challenge rezoning on the basis that it violates the comprehensive plan. Local government will be hampered in doing what it is supposed to do. Property rights will be trampled by the delays. People who disagree with local decisions will find solace in the judicial branch by virtue of this Court’s new-found authority which opens the courthouse door to attempts to overturn the decisions of local, duly-elected officials. Every gadfly with some amorphous environmental agenda, and enough money to pay a filing fee, will be anointed with status simply because the gadfly wants to “protect the planet.”
The environmental gadfly will win every time, not on the merits, but because, in the words of the trial judge, “[wjhen delay will prevent the construction of an approved but undesired development, then one may win by losing if the losing process is sufficiently long.” For those who respect property rights, look out!